**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANN MERCADO, | ) Case No. CV 14-3617-JPR |
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM OPINION AND ORDER** |
| | ) **REVERSING COMMISSIONER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**I. PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed January 23, 2015, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed.

**II. BACKGROUND**

Plaintiff was born on December 15, 1966. (AR 91.) She completed high school and worked as a payroll clerk and receptionist. (AR 110, 116, 425-26, 447.)

On November 16, 2011, Plaintiff submitted an application for SSI, alleging that she had been disabled since November 27, 2001. (AR 34, 91-95.) She alleged that she was unable to work because of asthma, arthritis, ulcers, migraines, chronic nerve pain, "left side body injury," "both leg pain," "hip pain," "lower back injury/pain," and "urethral stenosis/syndrome." (AR 109.) After her application was denied, Plaintiff requested a hearing before an Administrative Law Judge. (AR 60.) A hearing was held on September 12, 2013, at which Plaintiff, who was unrepresented, testified, as did a vocational expert ("VE"). (AR 412-60.) In a written decision issued October 31, 2013, the ALJ found Plaintiff not disabled. (AR 13-21.) Plaintiff requested that the Appeals Council review the ALJ's decision and submitted additional medical records in support of her claim. (AR 9, 398-411.) On March 7, 2014, after considering the additional evidence, the Appeals Council denied Plaintiff's request for review. (AR 5-8.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial

evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). If the evidence as a whole can reasonably support either affirming or reversing, the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

## IV. THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently

engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 416.920(a)(4); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 16, 2011, her application date.[2] (AR 15.) At step two, he concluded that Plaintiff had severe impairments of asthma, obesity, urethral stenosis, "status post gross hematuria and urinary incontinence," and degenerative disc disease of the lumbar spine. (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 16.) At step four, he found that

> prior to February 27, 2013, the claimant had [an RFC] to perform light work[3] . . . in that she was able to exert up to 20 pounds of force occasionally and/or up to 10

---

[2] The ALJ assessed whether Plaintiff had been under a disability on or after her application date rather than her alleged onset date (see AR 13, 15), noting that the earliest month Plaintiff could receive SSI benefits was the month following the month in which she filed her application (AR 13 (citing § 416.335)). Plaintiff has not challenged that portion of the ALJ's decision.

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." § 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

> pounds of force frequently and/or a negligible amount of force constantly to move objects. The claimant was able to stand and walk up to 4 hours and sit up to 6 hours in an 8-hour workday with normal breaks. She was able to perform work that did not require the climbing of ladders, ropes and scaffolds; no more than occasional climbing of ramps or stairs, stooping, kneeling, crouching and crawling; and more than frequent balancing. She was able to perform work that did not require any exposure to environmental respiratory irritants, and any concentrated or more than frequent exposure to extreme heat, wetness or humidity, extreme vibration, and hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions.

(AR 16-17.) He found that

> [a]s of February 27, 2013, the claimant has had [an RFC] to perform sedentary work[4] . . . in that she has been able to exert up to 10 pounds of force occasionally and/or exert a negligible amount of force frequently to move objects, including the human body. The claimant has been able to stand and walk up to two hours in an eight-hour workday with normal breaks, provided that standing and walking does not exceed 30 minutes at a time, after

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." § 416.967. "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." Id.

>which the claimant may sit for up to five minutes, during which time she may remain on task, if the work so lends itself.  She has been able to sit up to six hours in an eight-hour workday with normal breaks, provided that sitting does not exceed one hour at a time, after which she may stand and/or walk for up to five minutes, during which time she may remain on task, if the work so lends itself.  The claimant has been able to perform work that does not require the following: climbing ladders, ropes and scaffolds; more than occasional climbing of ramps or stairs; more than occasional stooping, kneeling, crouching and crawling; or more than frequent balancing. She has been able to perform work that does not require any exposure to environmental respiratory irritants, and any concentrated or more than frequent exposure to extreme heat, wetness and humidity, extreme vibration, and hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions.

(AR 17.)  Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a payroll clerk and receptionist as well as other work that existed in significant numbers in the national economy.  (AR 19-20.) Accordingly, the ALJ found Plaintiff not disabled.  (AR 20-21.)

**V.   DISCUSSION**

    A.   <u>Evidence Submitted to the Appeals Council Renders the ALJ's Decision Unsupported by Substantial Evidence</u>

Plaintiff contends that the ALJ erred in rejecting the opinion of her treating physician, Dr. Dan Tran.  (J. Stip. at 5-

10, 14-15.) For the reasons discussed below, remand is warranted.

### 1. Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. § 416.927(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. § 416.927(c)(2)-(6).

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008)

(quoting <u>Lester</u>, 81 F.3d at 830-31).  When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.  <u>Id.</u>  The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. § 416.927(c)(3)-(6).

Social Security Administration regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." <u>Brewes v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1162 (9th Cir. 2012); <u>see also</u> § 416.1470(b).  "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  <u>Brewes</u>, 682 F.3d at 1163; <u>accord</u> <u>Taylor v. Comm'r of Soc. Sec. Admin.</u>, 659 F.3d 1228, 1232 (9th Cir. 2011); <u>see also</u> <u>Borrelli v. Comm'r of Soc. Sec.</u>, 570 F. App'x 651, 652 (9th Cir. 2014) (remand necessary when "reasonable possibility" exists that "the new evidence might change the outcome of the administrative hearing").

        2.   <u>Relevant background</u>

On June 28, 2010, an MRI of Plaintiff's lumbar spine was unremarkable.  (AR 214-15.)  On January 17, 2012, Dr. Rocely Ella-Tamayo, a board-eligible internist, examined Plaintiff at

the Social Security Administration's request. (AR 346-51.) She noted that "no medical records" were available for review. (AR 346.) Dr. Ella-Tamayo found that Plaintiff had a slow but normal gait, back pain on flexion of 60 out of 90 degrees, positive straight-leg-raising tests bilaterally, and mild difficulty getting on and off the examination table because of back pain. (AR 350.) Plaintiff's sensation was "normal but decreased on the whole left lower extremity compared to the right." (Id.) Dr. Ella-Tamayo diagnosed low-back pain and history of urethral damage, asthma, and peptic ulcer disease. (Id.) She believed Plaintiff could push, pull, lift, and carry about 20 pounds occasionally and 10 pounds frequently; stand and walk for two to four hours in an eight-hour day with "normal breaks because of her back condition"; sit for unlimited amounts of time; occasionally kneel; and never squat. (AR 350-51.)

On January 30, 2012, consulting examiner Dr. B. Sheehy reviewed Plaintiff's file and opined that she could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for four hours and sit for six hours in an eight-hour day; occasionally stoop, kneel, crouch, and crawl; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and frequently balance. (AR 30-31.) Dr. Sheehy believed Plaintiff must avoid concentrated exposure to vibration, fumes, dusts, poor ventilation, and hazards. (AR 31.)

On September 4, 2012, Dr. Tran, Plaintiff's treating physician since at least June 2005 (see AR 263-308 (treatment notes)), completed an "Authorization to Release Medical Information" form, apparently for submission to the county agency

10

responsible for administering the CalWorks welfare program. (AR 396.)[5] On the form, Dr. Tran checked a box indicating that Plaintiff was unable to work and stated that her condition began on April 8, 2006, was chronic, and was expected to last until April 8, 2013. (Id.)

On October 15, 2012, Dr. N.J. Rubaum reviewed Plaintiff's medical records and made findings identical to Dr. Sheehy's. (AR 44-45.)

On February 27, 2013, an MRI of Plaintiff's lumbar spine showed straightening of the lumbar-spine curvature, suggesting muscle spasm; two- to three-millimeter disc bulges at L5-S1 and L4-5; a five-millimeter disc protrusion at L5-S1 and four-millimeter disc protrusion at L3-4; an annular tear and possible displacement of the nerve root at L5-S1; and neural foraminal stenosis at three levels.[6] (AR 342.) On April 1, 2013, Dr. Tran completed another "Authorization to Release Medical Information" form, again checking the box indicating that Plaintiff was unable

---

[5] The medical-information form was created by the State of California Health and Human Services Agency, and it listed Plaintiff's county worker and case number. (AR 396-97.) Plaintiff's files include other such forms, along with "CalWorks and Welfare to Work Time Limit Exemption Determination" forms stating that Plaintiff was exempt from certain CalWorks requirements because of her "medical problems." (See, e.g., AR 192, 194-98.)

[6] Foramen are openings in the spine that allow the nerves branching from the spinal cord to travel to the arms, legs, and other parts of the body. Foraminal Stenosis, Cedars-Sinai, https://www.cedars-sinai.edu/Patients/Health-Conditions/Foraminal-Stenosis.aspx (last accessed Apr. 29, 2015). Spinal stenosis occurs when the foramen become clogged and compress the nerves. (Id.)

11

to work. (AR 397.) Dr. Tran wrote that Plaintiff's condition began on April 8, 2006, was chronic, and was expected to last until April 1, 2014. (Id.)

In his decision, dated October 31, 2013, the ALJ accorded "significant weight" to Dr. Sheehy's opinion, stating without elaboration that it "seem[ed] reasonably well-supported by the overall record." (AR 19.) The ALJ stated that Dr. Tran's September 2012 opinion that Plaintiff was unable to work was "not credited with significant weight" because "the issue of 'disability' is reserved for the Commissioner" and Dr. Tran did "not identify the chronic condition in question, nor [did] he otherwise support his assessment with any reference to relevant clinical signs or testing results." (AR 18.)[7] However, the ALJ also found that Plaintiff's "updated record suggests some worsening of the degenerative disc disease of [her] lumbar spine" because the February 27, 2013 MRI showed "significant degenerative disc disease at multiple levels." (AR 19.) Thus, he concluded that "prior to February 27, 2013," Plaintiff had an RFC for "a significant range of light level exertion," but as of February 27, 2013, she had "additional restrictions, including a limitation to no more than sedentary exertion." (Id.) The ALJ ultimately concluded that Plaintiff was not disabled. (AR 21.)

Plaintiff requested review of the ALJ's decision (AR 9) and submitted additional medical records to the Appeal Council (AR

---

[7] The ALJ did not address Dr. Tran's nearly identical April 2013 opinion or Dr. Rubaum's October 2012 opinion. He discussed Dr. Ella-Tamayo's opinion but did not specify the weight he accorded it.

398-411). Those new records included a "Residual Functional Capacity Form" completed by Dr. Tran on December 20, 2013. (AR 400-03.) On the form, Dr. Tran listed Plaintiff's impairments as back pain and asthma.[8] (AR 400.) He stated that her symptoms included leg numbness, shortness of breath, and daily back pain from "L5-S1 disk herniation," which was worse with walking. (AR 400, 403.) Dr. Tran listed Plaintiff's test results and objective evidence as "MRI," "CT scan," and "consultants' reports."[9] (Id.)

Dr. Tran opined that Plaintiff could sit one hour before needing to stand or walk for 10 minutes and could sit for a total of three hours in an eight-hour workday. (AR 401.) Plaintiff could stand and walk for 30 minutes before needing to sit for 15 minutes and could stand and walk for a total of one hour in an eight-hour day. (AR 401-02.) Plaintiff could occasionally lift and carry up to 10 pounds and could never stoop. (AR 402.) Dr. Tran believed that Plaintiff would be absent from work because of her impairments or treatment more than three times a month and that her occasional migraine headaches and urinary incontinence might also affect her ability to work. (AR 403.) Dr. Tran stated that the earliest date the listed limitations applied was December 29, 2010. (Id.)

---

[8] Dr. Tran listed another impairment, possibly allergic rhinitis, but his handwriting is illegible. (AR 400.)

[9] Dr. Tran cited "CT scans" in support of his findings, but it is not clear what records he is referencing. (AR 400.) The record contains an August 2012 abdominal and pelvic CT scan showing several small kidney stones (AR 378), but it is unclear how that supports his findings.

The Appeals Council considered Plaintiff's additional evidence and ordered that it be made part of the administrative record but concluded that it did "not provide a basis for changing" the ALJ's decision. (AR 5-6, 8.)

### 3. Analysis

Plaintiff contends that the ALJ erred in rejecting the medical opinions of treating physician Tran primarily because "the evidence submitted post hearing invalidates the ALJ's . . . reason for rejecting [his] opinions." (J. Stip. at 9.) Defendant argues that the ALJ "properly concluded that the opinion of [Dr. Tran] should not be 'credited with significant weight'" and that his "conclusion that Plaintiff was disabled was an issue reserved to the Commissioner." (Id. at 10.) Although Defendant cites Dr. Tran's September 2012 and April 2013 medical-information forms (see id. (citing AR 396-97)), she nowhere discusses his December 2013 opinion or whether it renders the ALJ's decision unsupported by substantial evidence (see id. at 10-14 (Defendant's contentions)). For the reasons discussed below, Dr. Tran's December 2013 opinion, which was submitted to the Appeals Council and made part of the administrative record, renders the ALJ's decision unsupported by substantial evidence. See Brewes, 682 F.3d at 1163.

Neither of the ALJ's stated reasons for rejecting Dr. Tran's September 2012 opinion apply to his December 2013 opinion. Although the ALJ was correct that "the issue of 'disability' is reserved for the Commissioner" (AR 18), that is not a valid reason for rejecting Dr. Tran's judgments regarding Plaintiff's impairments, symptoms, and functional limitations. See Boardman

14

v. Astrue, 286 F. App'x 397, 399 (9th Cir. 2008); Davila v. Colvin, No. CV 14-2844-DFM, 2014 WL 5660455, at *3 (C.D. Cal. Nov. 4, 2014) (finding that ALJ improperly rejected treating doctor's opinion as "regarding an issue reserved to the Commissioner" when doctor "provided various functional limitations, such as sitting, standing, walking, and lifting limitations, as well as an opinion regarding [p]laintiff's possible absenteeism due to her impairments, which would have an effect on [her] ability to perform work-related functions"). The ALJ also rejected Dr. Tran's earlier opinion because he did not identify Plaintiff's condition or support his assessment with reference to relevant clinical signs or testing results. (AR 18.) But Dr. Tran included that information in his December 2013 opinion, stating, for example, that Plaintiff suffered from back pain and leg numbness resulting from an L5-S1 disk herniation and shortness of breath from asthma (AR 400, 403), listing Plaintiff's functional limitations (AR 401-03), and citing her MRI and consultants' reports (AR 400, 403).

Nor do the ALJ's other findings support a rejection of Dr. Tran's December 2013 opinion. The ALJ found that the record did not support some of Plaintiff's complaints, such as those regarding her right-foot impairment and bladder limitations (AR 18), but he specifically found that her lumber-spine condition was "worsening," citing the February 2013 MRI showing "significant degenerative disc disease at multiple levels" (AR 19). And although the ALJ credited Dr. Sheehy's opinion regarding Plaintiff's functional limitations (AR 19), Dr. Sheehy obviously did not review Plaintiff's February 2013 MRI before

rendering his opinion in January 2012.  Of the four doctors who rendered an opinion, only Dr. Tran was familiar with those test results.  (See AR 403 (noting L5-S1 disk herniation and citing "MRI report")).[10]  Indeed, based solely on the February 2013 MRI findings and without the benefit of a medical opinion, the ALJ found that Plaintiff was limited to performing less than the full range of sedentary work (AR 17, 19), which was significantly more restrictive than the limitations found by Dr. Sheehy and examining physician Ella-Tamayo.

And although Dr. Tran's assessment postdated the ALJ's October 2013 decision by almost two months, he had been treating Plaintiff since at least 2005 (see AR 263-308 (treatment notes)) and stated that his assessment of Plaintiff's limitations applied as early as December 2010 (AR 403).  As such, his opinion relates to the period on or before the date of the ALJ's decision.  See Taylor, 659 F.3d at 1232-33 (treating-physician opinion that postdated ALJ decision "related to the period . . . before the ALJ's decision" because it "concerned his assessment of [plaintiff's] mental health since his alleged disability onset date" and before expiration of disability insurance, during which

---

[10] Although Dr. Tran did not specify the date of the cited MRI report, he presumably referred to the most recent February 2013 MRI report, which showed a disc herniation at L5-S1.  (See AR 342 (noting two- to three-millimeter disc bulge, annular tear, and five-millimeter disc protrusion at L5-S1), 338 (Mar. 2013 note from Dr. Nelson Owyoung, who was board certified in neurology and internal medicine (AR 395), stating that lumbar-spine MRI "showed disk protrusion at L5-S1" and diagnosing "lumbar herniated disk L5-S1 with lumbar radiculopathy").  Plaintiff's previous MRI, rendered in June 2010, was "unremarkable" (AR 214-15), while an MRI conducted in March 2005 showed only a mild disc protrusion at L5-S1 (AR 380-81).

time physician examined plaintiff twice, supervised treating nurse practitioner, and approved nurse practitioner's prescriptions).

For all these reasons, it is reasonably possible that Dr. Tran's December 2013 report would have changed the ALJ's decision. See Borrelli, 570 F. App'x at 652 ("Remand is necessary where the material evidence gives rise to a 'reasonable possibility' that the new evidence might change the outcome of the administrative hearing."); Mengistu v. Colvin, 537 F. App'x 724, 725 (9th Cir. 2013) (reversing district court's determination that remand was unwarranted "because the new evidence, [a physician's] report, relates to the relevant time period and there is a reasonable possibility the report would have changed the [ALJ's] decision"). Reversal is therefore warranted.

B.  Remand for Further Proceedings Is Appropriate

When, as here, an ALJ errs in denying benefits, the Court generally has discretion to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit-as-true" rule to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Garrison v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

Under the credit-as-true framework, three circumstances must be present before the Court may remand to the ALJ with

instructions to award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. When, however, the ALJ's findings are so "insufficient" that the Court cannot determine whether the rejected testimony should be credited as true, the Court has "some flexibility" in applying the credit-as-true rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also Garrison, 759 F.3d at 1020 (noting that Connett established that credit-as-true rule may not be dispositive in all cases). This flexibility should be exercised "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Garrison, 759 F.3d at 1021.

Here, remand under Connett is appropriate. The ALJ was unable to assess Dr. Tran's December 2013 opinion because Plaintiff did not submit it until after the ALJ rendered his decision. Thus, further proceedings are appropriate to allow him to do so. Moreover, even if Dr. Tran's functional limitations are credited, the effective date of those limitations is still unclear. Although Dr. Tran opined that they existed as of December 2010, an MRI conducted in June 2010 was unremarkable, and it was not until February 2013 that an MRI reflected

significant lumbar-spine problems.  Moreover, after assessing Dr. Tran's most recent opinion, the ALJ may need to revise Plaintiff's RFC and elicit additional VE testimony regarding Plaintiff's ability to work.  Thus, under Connett, remand for further proceedings is appropriate.

**VI.  CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Opinion.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 11, 2015

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[11] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."